IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

OLATUNDE A. VINCENT,

      Petitioner,

v.                                      2:26-cv-00104-JB-KK

TODD BLANCHE, *Acting U.S. Attorney*
*General, et al.,*[1]

      Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Petitioner Olatunde A. Vincent's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) ("Petition), filed January 20, 2026. The Federal Respondents filed a response to the Petition on February 9, 2026. (Doc. 12). Petitioner filed replies in support of the Petition on February 20, 2026, and March 2, 2026. (Docs. 13, 16). Warden Dora Castro did not file a response to the Petition.[2] United States District Judge James O. Browning referred this case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition. (Doc. 5). Having considered the parties' submissions and the relevant law, I conclude that Petitioner is entitled to relief. Therefore, I recommend that the Court GRANT the Petition because Petitioner is being indefinitely detained without a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

---

[1] Todd Blanche, Acting Attorney General, is automatically substituted in place of Pamela Bondi as the defendant in this action pursuant to Fed. R. Civ. P. 25(d).
[2] However, as Federal Respondents note in their response, "all arguments made on behalf of the remaining Respondents apply equally to the Warden." (Doc. 12 at 1 n. 1).

## I.    Factual Background

Petitioner has been in immigration detention since at least April 23, 2025. (Docs. 3 at 2; 12-1 at 2). He is currently incarcerated at the Otero County Processing Center in Chaparral, New Mexico. (Doc. 1 at 3).

Petitioner is a Nigerian citizen who entered the United States at the John F. Kennedy International Airport via a B-2 nonimmigrant visa in October 2018. (Docs. 3 at 1; 12-2 at 1). Petitioner eventually settled in Maryland, where he secured a job as a delivery driver for Amazon. (Doc. 3 at 1). Petitioner avers that on May 20, 2020, his status "was adjusted to a lawful resident of Maryland with approved documentation." (*Id.*).

However, on November 1, 2021, Petitioner was arrested while on his way to work. (*Id.*). On July 5, 2022, he was convicted of conspiracy to commit wire fraud and aggravated identity theft in violation of 18 U.S.C. §§ 1349 and 1028A. (Docs. 12-1 at 2; 12-2 at 3; 13 at 20). For these convictions, Petitioner was sentenced to prison for fifty months and given two years of supervised release following his release from prison. (Docs. 1-6 at 6, 9; 12-2 at 3). Petitioner served at least part of his prison sentence at the federal correctional facility in Ashland, Kentucky. (Doc. 3 at 1).

Due to his criminal convictions, removal proceedings were initiated against Petitioner. (Doc. 12-2 at 1). Following his release from prison on August 9, 2024, Petitioner was transferred to the custody of the United States Immigration and Customs Enforcement ("ICE") agency. (Docs. 1-6 at 7; 12-2 at 8). A final order of removal was entered against Petitioner on August 15, 2024, (Docs. 1 at 2; 1-6 at 2), pursuant to the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. §§ 1101(a)(43)(M)(i), (U) (defining an aggravated felony as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" or "an

2

attempt or conspiracy to commit an offense described in this paragraph."), 1227(a)(2)(A)(iii) (providing that any "alien who is convicted of an aggravated felony at any time after admission is deportable.").[3]

On April 23, 2025, Petitioner was transferred to the Otero County Processing Center. (Docs. 3 at 2; 12-1 at 2). On July 7, 2025, ICE's Enforcement and Removal Operations ("ERO") division reviewed Petitioner's custody status and advised him that he could "submit evidence in support of his release." (Doc. 12-1 at 3). However, after this review, ICE determined that Petitioner should remain in custody "since removal is likely to occur in the reasonably foreseeable future." (*Id.*). In October 2025, the ERO again reviewed Petitioner's custody status. (*Id.*). Following this review, Petitioner was advised that "he would not be released from ICE custody because there [was] a significant likelihood of removal in the reasonably foreseeable future." (*Id.*). While in detention at the Otero County Processing Center, Petitioner filed an I-589 Application for Asylum and Withholding of Removal, expressing fear for his safety should he be deported to Nigeria due to his status as a member of the LGBTQ community. (Doc. 1-7 at 29–33). Petitioner has also provided an affidavit from his spouse, which indicates he is still pursuing relief from his final order of removal. (Doc. 21 at 16).

The Federal Respondents assert that they are "actively working to remove Petitioner in the foreseeable future." (Doc. 12 at 5). On March 16, 2026, Federal Respondents submitted a status report to the Court indicating that Petitioner was scheduled to be removed to Nigeria before March 31, 2026. (Doc. 18.)  However, on April 2, 2026, Federal respondents reported that Petitioner had not been removed and that no removal flight has been scheduled. (Doc. 20.)

## II.    The Parties' Arguments

---

[3] Petitioner does not dispute that he was convicted of an aggravated felony.

As part of the relief requested in his Petition, Petitioner seeks his immediate release from custody at the Otero County Processing Center. (Doc. 1 at 8).  He argues that his continued and indefinite detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution in two separate ways. (*Id*. at 6–7). First, he argues that his continued and indefinite detention violates his "right to substantive due process through a deprivation of the core liberty interest in freedom from bodily restraint." (*Id*. at 6). More specifically, Petitioner contends that he has "already been detained in excess of six months and [his] removal is not significantly likely to occur in the reasonably foreseeable future." (*Id*. at 7).

Second, Petitioner asserts that his procedural due process rights have been violated because he has been denied an opportunity to demonstrate that he should not be detained. (*Id*.). In what appears to be a related argument, Petitioner also contends that he did not receive "adequate notice of the precise charge of 'conspiracy' under § 101(a)(43)(U) of the Act upon which [he] is deportable and the statutory provision alleged to have been violated." (*Id*. at 3). Additionally, Petitioner makes an *Accardi* doctrine[4] argument, contending that the Federal Respondents' failure "to follow its own regulations poses a high probability that the agency is not acting in accordance with the Administrative Procedure Act ('APA') regulations." (*Id.*).

In response to Petitioner's substantive due process argument, the Federal Respondents note that it is "well established that detention is a constitutionally valid aspect of the deportation process." (Doc. 12 at 3). Moreover, they argue that 8 U.S.C. § 1231(a)(6) authorizes detention beyond the typical removal period for aliens[5], like Petitioner, who have been convicted of an

---

[4] In *Accardi*, the Supreme Court held that an agency must follow its own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)
[5] The term "alien" is used in the relevant statutory framework, and thus I only use the word to reflect this framework.

aggravated felony. (*Id*. at 5). Additionally, the Federal Respondents state that, upon information and belief, "Petitioner's removal is significantly likely in the reasonably foreseeable future." (*Id*.).

The Federal Respondents also assert that Petitioner's procedural due process argument is equally without merit, arguing that he was served "with a Notice of Intent to Issue a Final Administrative Order along with the charges or removability." (*Id*. at 4). However, the Federal Respondents argue that Petitioner "failed to sign the certificate of service or acknowledge receipt." (*Id*.). Accordingly, the Federal Respondents argue that "Petitioner's failure to engage in the process does not provide an exception to his removal or validate his claim for habeas relief." (*Id*. at 5).

However, the Federal Respondents advance no argument in their response regarding Petitioner's *Accardi* doctrine argument.

## II.     Discussion

I recommend that the Court find that Petitioner's Fifth Amendment rights are being violated by his indefinite and continued detention.  *See Zadvydas,* 533 U.S. at 701. Additionally, I recommend that the Court decline to address Petitioner's remaining arguments. Based on these findings, I recommend that the Court order Petitioner's immediate release pursuant to an order of supervision. *See Kalombo v. Shanahan*, No. 07 Civ. 11350 (PKC), 2009 WL 1788589, at *4 (S.D.N.Y. June 23, 2009).[6]

---

[6] The applicable regulations provide that an alien released after the removal period under 8 U.S.C. §1231(a)(1) "shall be released pursuant to an order of supervision." 8 C.F.R. § 241.5(a). The order of supervision, at a minimum, should address the following:
   (1) A requirement that the alien report to a specified officer periodically and provide relevant information under oath as directed;
   (2) A requirement that the alien continue efforts to obtain a travel document and assist the Service in obtaining a travel document;

A.      **Overview of Legal Principles Applicable to Habeas Corpus Petitions**

This Court is authorized to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687–88).

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

"[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This period of time is called the "removal period." *Id.* The removal period begins once the removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed on appeal or the time to file an appeal has expired. *Id.* § 1101(a)(47)(B). In certain enumerated circumstances, an alien "may be detained beyond the removal period." *Id.* § 1231(a)(6); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021) (providing that an alien may be detained beyond

---

(3) A requirement that the alien report as directed for a mental or physical examination or examinations as directed by the Service;
(4) A requirement that the alien obtain advance approval of travel beyond previously specified times and distances; and
(5) A requirement that the alien provide DHS with written notice of any change of address in the prescribed manner.

*Id.*

6

the removal period where (1) the alien fails to make a timely application for travel documents or acts to prevent his removal; (2) removal is not practicable or proper; (3) the alien is inadmissible, removable as a result of violations of status requirements, or there are national security or foreign policy reasons for not removing the alien; or (4) the alien is a risk to the community or unlikely to comply with a removal order).

However, in *Zadvydas*, the Supreme Court explained that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. As such, the Court construed § 1231(a)(6) to limit "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. "Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

Under *Zadvydas*, six months of post-removal order detention is "presumptively reasonable." *Id.* at 701. After this point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This presumption does not mean that every alien must be released if not removed after six months in detention. *Id.* Rather, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

To show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," a petitioner is not required to "show the absence of *any* prospect of removal." *Id.* at 702 (emphasis in original). Instead, they are only required to provide a "good reason to believe" that removal is unlikely—"[t]his distinction is not a matter of semantics, but an important clarification of Petitioner's burden at this stage." *Aguilar v. Noem*,

Case No. 25-cv-03463-NYW, 2025 WL 3514282, at *4 (D. Colo. Dec. 8, 2025) (internal citation omitted). Courts have found that such a "good reason" exists when the presumptively reasonable six months of detention have passed, and other circumstances also indicate that there is no significant likelihood of removal. *See, e.g.*, *Ahrach v. Baltazar*, Civil Action No. 25-cv-03195-PAB, 2025 WL 3227529, at *4 (D. Colo. Nov. 19, 2025) (finding Petitioner's burden satisfied where Petitioner detained for roughly seven months and "ICE made no efforts to remove [her] beyond soliciting acceptances" from three countries on just one day); *Salazar-Martinez v. Lyons*, No. 2:25-CV-00961-KG-KBM, 2025 WL 3204807, at *2 (D.N.M. Nov. 17, 2025) (finding Petitioner's burden satisfied where Petitioner detained for seven months and "ICE has not 'identif[ied] any country that has agreed to accept her.'" (alteration in original)); *Zhuzhiashvili v. Carter*, 802 F.Supp.2d 1337, 1339 (D. Kan. 2025) (finding Petitioner's burden satisfied where Petitioner detained for seven months and "officials have made no progress towards his removal or even identified a possible destination."); *Vargas v. Noem*, Case No. 25-3155-JWL, 2025 WL 2770679, at *2 (D. Kan. Sep. 29, 2025) (Petitioner detained for nine months and "officials have not been able even to name for him any country to which an inquiry has been made or to which petitioner might possibly be removed."). Notably, "[t]he mere fact that the requisite six months have now elapsed is not sufficient to meet [Petitioner's] burden." *Reyna-Salgado v. Noem*, Case No. 25-3172-JWL, 2025 WL 3209007, at *2 (D. Kan. Oct. 3, 2025) (citing *Zadvydas*, 533 U.S. at 701).

After a petitioner has shown that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden turns to the respondents to rebut the petitioner. *Zadvydas*, 533 U.S. at 701. The respondents must provide "evidence" in rebuttal. *Id.* "Unsubstantiated assertions do not meet this burden." *Aguilar*, 2025

WL 3514282, at *6 (citing *Pena-Gil v. Lyons*, Civil Action No. 25-cv-03268-PAB-NRN, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025) (collecting cases)). "[U]nilateral effort without establishing actual progress toward removal" is also insufficient. *Lorenzo v. Bondi*, Case No. 2:25-cv-00923 KWR-GJF, 2026 WL 84521, at *5 (D.N.M. Jan. 12, 2026). "[G]ood faith efforts to effectuate . . . deportation" without a significant likelihood of reasonably foreseeable removal are similarly insufficient. *Zadvydas*, 533 U.S. at 702.

"[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701; *see also Arthur v. Mukasey*, Civil Action No. 09-cv-00059-MSK-KMT, 2010 WL 234936, at *1 n.1 (D. Colo. Jan. 19, 2010) ("As the period of detention grows, so does the burden on the government to demonstrate that removal is reasonably foreseeable."). Finally, the Respondents' allegations, "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248.

In this case, Petitioner is entitled to habeas relief because he is being detained with no significant likelihood of removal in the reasonably foreseeable future.

**B.      Petitioner has shown that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.**

Petitioner has demonstrated "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. It is undisputed that Petitioner, at this time, has been detained for almost twelve months. While this alone is insufficient for Petitioner to satisfy his burden, *see Reyna-Salgado,* 2025 WL 3209007, at *2, Petitioner has also presented evidence that he currently does not have a valid passport, a basic form of identification that is often necessary to verify an alien's identity and permit their entry into another country. (Docs. 1-4 at 16; 1-7 at 29). As the evidence presented by the Federal

Respondents demonstrates, this has hampered efforts to have the Nigerian government verify Petitioner's identity and, presumably, to issue travel documents.  (Doc. 12-1 at 4). With the Nigerian government being unable, or perhaps unwilling, to verify Petitioner's identity, obvious barriers exist that make it unlikely that travel documents will be obtained for Petitioner in the reasonably foreseeable future.  *See Izbitski v. Carnes,* 1:25-cv-00778-JB-JMR, 2025 WL 3754485, at *4 (D.N.M. Dec. 29, 2025) (concluding that Petitioner had met his burden to establish that removal was not significantly likely to occur in the reasonably foreseeable future where there were "obvious barriers to obtaining travel documents."), *report and recommendation adopted*, No. CV-0778 JB/JMR, 2026 WL 102974 (D.N.M. Jan. 14, 2026).

With such obvious barriers currently in place, there is simply no evidence indicating that travel documents will be obtained for Petitioner in the reasonably foreseeable future. *See Sereste-Khama v. Ashcroft*, 215 F.Supp.2d 37, 50 (D.D.C. 2002) (concluding that removal was not significantly likely in the reasonably foreseeable future where the respondents had not shown that "any travel documents are in hand, nor have they provided any evidence, or even assurances from the [foreign] government, that travel documents will be issued in a matter of days or weeks or even months."). Travel documents requests on behalf of the Petitioner were first sent to the Nigerian consulate nearly a year ago. (Doc. 12-1 at 3). To date, there is no evidence that travel documents have been obtained, which itself suggests that they will not be forthcoming in the reasonably foreseeable future. *See Samadi v. Warden Richwood Corr. Ctr.*, CIVIL ACTION NO. 25-1889, 2026 WL 660574, at *2 (W.D.  La. Mar. 9, 2026) ("[T]hat Respondents have not obtained a travel document following these requests submitted almost nine months ago suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable

10

future.") (emphasis in original), *report and recommendation adopted*, CASE NO. 3:25-CV-01889 SEC P, 2026 WL 663239 (W.D. La. Mar. 9, 2026).

Moreover, the Federal Respondents have not even attempted to identify a possible alternative destination to which Petitioner could be removed. *See Salazar-Martinez*, 2025 WL 3204807, at *2; *see also Zhuzhiashvili,* 802 F.Supp.2d at 1339. Given these circumstances, Petitioner has "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

**C.    The Federal Respondents have not met their burden to show evidence of a significant likelihood of removal in the reasonably foreseeable future.**

The Federal Respondents have not met their burden to show that there is a significant likelihood of removal in the reasonably foreseeable future. *Id.* While the Respondents have provided some evidence to rebut Petitioner's showing, (*see* Docs. 12-1, 18, 20), the evidence is insufficient. Petitioner's detention has lasted for at least twelve months, more than twice the length of time the Supreme Court decided was "presumptively reasonable" in *Zadvydas*. *Id.* Given this prolonged detention, "what counts as the 'reasonably foreseeable future'" must conversely shrink. *Id.*

At most, the Federal Respondents have presented evidence demonstrating that they have attempted to work with the Nigerian government to effectuate Petitioner's removal. (Doc. 12-1 at 3–4). However, "[g]eneral indications that U.S. agencies have been in discussions with [the target country] regarding [removal] efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Dao v. Bondi*, CASE NO. 2:25-cv-02340-LK, 2026 WL 18626, at *4 (W.D. Wash. Jan. 2, 2026). (first alteration in original) (citation omitted).  Accordingly, this evidence is insufficient to carry the Federal Respondents' burden.

11

Moreover, as the Federal Respondents' evidence demonstrates, efforts to work with the Nigerian government to effectuate Petitioner's removal have not been particularly fruitful. For example, ICE's ERO division first requested travel documents from the Nigerian consulate on May 23, 2025, nearly one year ago. (Doc. 12-1 at 3). Apparently, this request did not lead to anything, as travel documents were again requested from the Nigerian consulate on October 9, 2025. (*Id*.). On November 7, 2025, the ERO reviewed Petitioner's file without any update "from the Nigerian consulate towards the travel documents." (*Id*.). The ERO subsequently submitted an Electronic Nationality Verification ("EVA") request to the Nigerian consulate on November 19, 2025, "using the petitioner's passport number." (*Id*.). On December 5, 2025, the Nigerian government denied the EVA request because they "could not verify the petitioner's identity through his passport number." (*Id*. at 4). While these efforts appear to have been made in good faith, such efforts, without any evidence of actual progress, are insufficient to demonstrate that removal is significantly likely to occur in the reasonably foreseeable future. *See Macias v. Baltazar*, Civil Action No 1:26-cv-01046-SKC, 2026 WL 865174, at \*4 (D. Colo. Mar. 30, 2026) ("Instead, the government must make legitimate progress towards removal."); *see also Hassoun v. Sessions*, Case # 18-CV-586-FPG, 2019 WL 78984, at \*5 (W.D.N.Y. Jan. 2, 2019) (explaining that "the reasonableness of Petitioner's detention turns on whether and to what extent the government's efforts are likely to bear fruit. Diligent efforts alone will not support continued detention.").

The Federal Respondents also have presented evidence that an interview was requested with the Nigerian embassy on January 27, 2026. (Doc. 12-1 at 4). However, this is inadequate to demonstrate that removal is significantly likely to occur in the reasonably foreseeable future. *See Bunnell v. Noem*, Case No. 2:25-cv-02259-GMN-EJY, 2025 WL 3707588, at \*4 (D. Nev. Dec.

22, 2025) (finding that the fact that a petitioner had an interview with the Iranian consulate was insufficient to establish that removal was likely in the reasonably foreseeable future because the government's continued good faith efforts toward removal does not establish that removal is likely). Notably, the Federal Respondents, having been Ordered to provide two status reports, have not presented any evidence suggesting that an interview with the Nigerian embassy ever occurred and, if it did, what followed. Additionally, the Federal Respondents produced a statement from Jose Ortez, an assistant field office director for ICE, that "ICE believes that there is a significant likelihood of removal in the reasonably foreseeable future to Nigeria." (Doc. 12-1 at 4). But a mere belief, without concrete evidence to support it, is also insufficient to carry the Federal Respondents' burden. *See Kazemzadeh v. United States*, Case No. 2:25-cv-01941-JAD-NJK, 2026 WL 905755, at *3 (D. Nev. Apr. 1, 2026) ("But that conclusory statement, unsupported by concrete facts demonstrating why ICE expects removal to occur, is insufficient to carry the government's burden."). It is also difficult to take this assertion at face value when ICE has represented since at least July 2025 that removal was significantly likely to occur in the reasonably foreseeable future.

Federal Respondents have represented to the Court that Petitioner was scheduled to depart "on a commercial flight to Nigeria before March 31, 2026." (Doc. 18 at 1). However, as the Federal Respondents acknowledge, "Petitioner was not removed at that time." (Doc. 20 at 1). Instead, the Federal Respondents represent that "Petitioner has been nominated for the next charter flight," which is "anticipated to be within the month." (*Id*.). While this could indicate that removal is likely to occur in the foreseeable future, I find that it does not for three reasons. First, other than the unsupported assertions of their attorney, the Federal Respondents have submitted no evidence that such removal efforts actually occurred. Bare assertions made by an attorney

cannot support a finding that removal is likely to occur in the reasonably foreseeable future. *See United States v. Dixon*, 137 F.4th 592, 604 (7th Cir. 2025) ("The unsupported assertions of attorneys are not evidence…"); *see also Aguilar*, 2025 WL 3514282, at \*6. Second, the Federal Respondents have not produced any evidence that travel documents have been obtained, often a prerequisite to board an international flight. Third, attempting to place Petitioner on an international flight, without evidence that proper travel documents have been obtained, does not establish that removal is likely to occur in the reasonably foreseeable future. *See Jobe v. Acuna*, CIVIL ACTION No. 25-1391, 2026 WL 775928, at \*3 (W.D. La. Mar. 3, 2026) ("Attempting to place Petitioner on an international flight without a valid travel document or passport does not reflect a genuine effort to remove him."), *report and recommendation adopted*, 25-CV-1391, 2026 WL 772631, at (W.D. La. Mar. 18, 2026). Moreover, the fact that Petitioner was not removed in March is evidence that supports an inference that his removal is unlikely to occur in the reasonably foreseeable future. *See id.*  And the Federal Respondents have not provided any explanation as to why Petitioner was not removed in March, nor, in the two weeks since their counsel reported he was nominated for a charter flight, Federal Respondents have provided not further update indicating any progress toward removal in the reasonably foreseeable future.

Finally, the Federal Respondents have not presented any evidence suggesting that they are searching for alternative countries for which to remove Petitioner. Without such evidence, I cannot find that Petitioner's removal is likely to occur in the reasonably foreseeable future. *See Villanueva v. Tate,* 801 F.Supp.3d 689, 702 (S.D. Tex. 2025) ("Considering the government's past failure to identify a country willing to accept [Petitioner] and its current refusal to identify any possible third country for [Petitioner's] removal, the Court cannot say that his removal is reasonably foreseeable.").

14

In short, I conclude that based on the record of this case, Federal Respondents have failed to provide sufficient evidence that would support a finding that Petitioner is likely to be removed in the reasonably foreseeable future.

**D.    The Court Should Decline to Address Petitioner's Remaining Requests for Relief.**

I recommend that the Court decline to address Petitioner's remaining requests for relief. In addition to challenging his continued and indefinite detention on substantive due process grounds, Petitioner also challenges his detention on procedural due process grounds. And as part of his procedural due process claim, Petitioner appears to be attacking his underlying order of removal, as he contends that he was not given adequate notice "of the precise charge of 'conspiracy' under § 101(a)(43)(U) of the Act upon which [he] is deportable and the statutory provision alleged to have been violated." (Doc.1 at 3). However, a federal district court does not have jurisdiction to review an attack, whether direct or indirect, on a final order of removal. *See Andoh v. Barr,* 19 Civ. 8016 (PAE), 2019 WL 4511623, at * (S.D.N.Y. Sep. 18, 2019) ("[A] district court does not have jurisdiction over claims that, directly or indirectly, challenge an alien's removal."); *see also Vernitus v. Acting Sec'y*, Case No: 6:20-cv-1998-ACC-EJK, 2021 WL 9408910, at *3 (M.D. Fla. Feb. 25, 2021) ("Federal district courts do not have jurisdiction over challenges against removal orders, regardless of whether such challenges are direct or indirect.").  Thus, to the extent Petitioner attempts to bring a procedural due process claim attacking his underlying order of removal, I recommend that the Court decline to address such a claim due to lack of jurisdiction.

Additionally, with his procedural due process claim, Petitioner argues that he is entitled to periodic review of his custody status and a bond hearing. (Doc. 2 at 11–18). However, given that I recommend that Petitioner be released subject to an order of supervision, if the Court

adopts my recommendation, it need not address these aspects of Petitioner's procedural due process claims because they would be moot. *See Abdala v. I.N.S.,* 488 F.3d 1061, 1064 (9th Cir. 2007) ("Likewise, a petitioner's release from detention under an order of supervision mooted his challenge to the legality of his extended detention." (quotations and brackets omitted)); *see also S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it.").

Further, Petitioner brings an *Accardi* doctrine claim, arguing that the Federal Respondents failure "to follow its own regulation poses a high probability that the agency is not acting in accordance" with the APA. (Doc. 1 at 3). However, it appears that Petitioner's requested relief for this claim is that he be granted a bond hearing or be released. (*Id.* at 8). Thus, if the Court were to adopt my recommendation of releasing petitioner, it need not address this claim as it would be moot.  *Smith*, 110 F.3d at 727.

As part of his requested relief, Petitioner also requests that this Court "[e]njoin Respondents in transferring or removing Petitioner outside the jurisdiction of the District of New Mexico, specifically, from Otero County Processing Center, Chaparrel, New Mexico pending the resolution of this petition."  (Doc. 1 at 8). This request will also be mooted if the Court accepts my recommendation. *See Smith*, 110 F.3d at 727.

Finally, Petitioner requests that the Court "[e]nter preliminary and permanent relief enjoining Respondents from further unlawful detention of Petitioner." (Doc. 1 at 8). Generally, to be granted a preliminary injunction, a party must prove: (1) he is substantially likely to succeed on the merits; (2) that he will suffer irreparable injury if the Court denies injunctive relief; (3) that his threatened injury outweighs the opposing party's under the injunction; and (4)

that the injunction is not adverse to the public interest. *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019). The standard for permanent injunctions is virtually identical. *See Shaw v. Smith*, 166 F.4th 61, 78 (10th Cir. 2026). However, I recommend that the Court decline to address this issue because Petitioner has not advanced an argument addressing any of the factors for preliminary or permanent injunctive relief. In making an argument on an issue, "a party must offer some argument or development of its theory, cite relevant precedents, and frame the issues for decision." *Hausknecht v. John Hancock Life Ins. Co. of New York*, 614 F.Supp.3d 168, 186 (E.D. Pa. 2022) (quotations and citation omitted). Here, Petitioner failed to do any of this, and it is not the Court's "role to craft arguments for the parties." *Id*. Accordingly, I recommend that the Court decline to address this aspect of Petitioner's requested relief.

### C.      Recommendation

I recommend that the Court find that Petitioner's substantive due process rights are being violated by his indefinite detention. I also recommend that the Court decline to address his remaining requests for relief. Based on these recommended findings, I recommend that the Court GRANT Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1). I also recommend that the Court order Petitioner's immediate release subject to an order of supervision.

KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

17

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  In other words, if no objections are filed, no appellate review will be allowed.**